KAREN R. BAKER, Associate Justice
On July 19, 2017, appellant, Ricardo McDaniel, was convicted by a St. Francis County Circuit Court jury of capital murder, one count of first-degree battery, and one count of aggravated residential burglary.
*848 McDaniel was sentenced to life imprisonment without the possibility of parole for capital murder and two consecutive twenty-year sentences for the battery and aggravated residential burglary.
This appeal stems from the October 25, 2014, death of twelve-year-old Joshua Wilson and injury to Xavier Melton. Lashundra Wilson is the mother of Joshua and Melton. Wilson testified that she and McDaniel were in a relationship on and off for six and a half years, beginning in 2007. Wilson testified that the two lived together off and on during this time as well. In January 2014, Wilson asked McDaniel to move out for good. After McDaniel moved out, the two continued to see each other on the weekends, but that ended in September 2014 after McDaniel had an altercation with Wilson's two sons. At that point, Wilson told McDaniel to not return to her home, and she changed the locks. At trial, the State alleged that on the night of October 24, 2014, McDaniel broke into Wilson's home and shot and killed Joshua. Further, the State alleged that McDaniel attempted to kill Melton by holding a pillow on his face, stabbing, and shooting him. McDaniel testified in his own defense that on the night of the crimes, Wilson invited him to her home, that he was in Wilson's bedroom with her when he heard a noise and went out to the hallway to check for the noise when he was tackled by Melton, who was armed with a gun. McDaniel testified that Melton tackled him and that the gun discharged accidentally.
The jury convicted McDaniel as set forth above and this appeal followed. On appeal, McDaniel contends that the circuit court erred when it denied McDaniel's motion for mistrial.
For his sole point on appeal, McDaniel asserts that the circuit court erred when it denied McDaniel's motion for mistrial because the statement was contrary to the pretrial motion and agreement-and the limiting instruction was insufficient to cure the prejudice. The State responds that McDaniel has failed to demonstrate unfair prejudice because the instruction cured any error, and therefore, this court should affirm the circuit court.
A mistrial is an extreme and drastic remedy to be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. Russell v. State , 306 Ark. 436, 815 S.W.2d 929 (1991). The grant or denial of a motion for mistrial lies within the sound discretion of the circuit court, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. King v. State , 298 Ark. 476, 769 S.W.2d 407 (1989). Further, in dealing with issues relating to the admission of evidence pursuant to Arkansas Rule of Evidence 404(b), a circuit court's ruling is entitled to great weight, and this court will not reverse absent an abuse of discretion. Anderson v. State , 357 Ark. 180, 163 S.W.3d 333 (2004) ; Barnes v. State , 346 Ark. 91, 55 S.W.3d 271 (2001). Additionally, we have held that "an admonition will usually remove the effect of a prejudicial statement unless the statement is so patently inflammatory that justice could not be served by continuing the trial. Kimble v. State , 331 Ark. 155, 959 S.W.2d 43 (1998)." Williams v. State , 2011 Ark. 432, at 8, 385 S.W.3d 157, 162. Finally, "among the factors this court considers on appeal in determining whether a circuit court abused its discretion in denying a mistrial motion are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice." Armstrong v. State , 366 Ark. 105, 113, 233 S.W.3d 627, 634 (2006) (citations omitted).
*849 Before trial, McDaniel filed a motion in limine to exclude any prior bad acts or altercations between McDaniel and Wilson. At the pretrial hearing, the State agreed with McDaniel's motion in limine regarding prior altercations between McDaniel and Wilson:
PROSECUTOR : Regarding past altercations between [McDaniel and Wilson], we don't anticipate putting on proof of past alterations between [Wilson] and ... McDaniel.... So if their motion is simply limited to past events concerning [McDaniel and Wilson], I don't believe we have a problem with that.
At trial, during Wilson's testimony on direct examination, Wilson was questioned about her relationship with McDaniel:
PROSECUTOR : [H]ow long did you and [McDaniel] have a relationship with each other, how long a time?
WILSON : Six, six and half years.
PROSECUTOR : A long time. Did you date other individuals during that time period?
WILSON : No, because we met, then we moved in together and we was just living together. He was there. He was like - he was there.
PROSECUTOR : During that time, did you all have any periods of time where you all would separate from each other?
WILSON : At the beginning, it was rocky. I ain't going to lie. At the beginning, we had our fights. I had to go to work with the black eye. I had co-workers tell me, they said, I can see the black eye. "Oops, I told you I'm allergic to fish."
And, at first, we - -
(Counsel approached the Bench, and the following proceedings were held outside the hearing of the Jury):
DEFENSE ATTORNEY : Judge, may we approach?
THE COURT : Yes, sir.
DEFENSE ATTORNEY : Your Honor, we would at this time, we would move for a mistrial because we just agreed that she couldn't talk about prior abuse. And that's just what she did.
PROSECUTOR : The question I asked said, "did you all have any periods of separation?" And I think that her answer, you know, a jury can be cured by instruction. I didn't intend to go through that. The question didn't call for it.
DEFENSE ATTORNEY : But she - - the order is she can't go into it, and that's what she did. The only remedy is a mistrial.
PROSECUTOR : Well, and then there is this other possibility which would be to instruct the jury to disregard as unresponsive, then ask her to, please, in the future, just answer the question that is asked. That would be another alternative.
DEFENSE ATTORNEY : I don't think that cures what just happened. That does not cure it.
THE COURT : You all evaluate what the next option is, what the case law is. We can take a break.
DEFENSE ATTORNEY : I can't imagine what the case law is, but we can certainly - -
PROSECUTOR : We can give it a shot.
THE COURT : Let's try it. Let's try it. We'll take a break.
(The Jury was excused.... The following proceedings were held outside the presence of the jury)
....
THE COURT : Did you all have much luck?
PROSECUTOR : Yeah, he did. Judge, John has found a case, one of about a dozen.
*850 This is where the answer is unresponsive. It's not a basis for a mistrial. It's a basis for (inaudible) instruction.
THE COURT : That's my thoughts.
PROSECUTOR : There are about a dozen cases.
DEFENSE ATTORNEY : Well, I still ask for the mistrial. I take it, the Court is denying it?
THE COURT : I'd like to hear more.
DEFENSE ATTORNEY : Well, the thing is that it wasn't just unresponsive. It was directly against what the court had ruled, that we were not going into this, and it was not like we got in an altercation. It was just, like, go to work with a black eye. That is saying, I was abused by this man for years.
And that is exactly what we were trying to keep out of this - - in front of the jury, and the prosecution agreed to it. And I don't see that there is any way to cure that.
THE COURT : That's not what we're looking for. I think it can be cured, but I don't know exactly what we should say to cure it.
But my first question is, is why did we have that agreement to not? Of course, I didn't know anything about it.
PROSECUTOR : Well, I don't think this is what we are talking about anyway. What we did was agreed not to go set out to prove prior violent assaults by the defendant on the mother. And this was, she said, I showed up one day at work with a black eye. Now, there is no direct testimony as to who gave it to her. It was - - anyway, that is what the case law is.
THE COURT : Thank you. Actually, it was not responsive to anything [the prosecutor] asked.
PROSECUTOR : What he asked was, "Did you all ever separate?"
THE COURT : Well, that's - - "Nonresponsive answers stating matters that is incompetent and inadmissible into evidence, for cautionary statements, strike out the answer or so [sic] much of it as is proper and instruct the jury to disregard as evidence."
Now, how do we refer to that in this cautionary statement without underlining it?
PROSECUTOR : Well, that's the defendant's choice, if they want to limit the instruction or not.
DEFENSE ATTORNEY : I believe, as far as denying my motion for mistrial, that we need two things. We need to bring the witness into Court and tell her she can't respond that way.
....
Second, the court should admonish the jury that they are not to listen to anything blurted ... out or stated about the - that is not responsive to the question he asked.
THE COURT : Without saying that the - - without underlining?
DEFENSE ATTORNEY : I don't want to underline.
PROSECUTOR : Whatever he wants.
THE COURT : Well, tell me what. I know you don't want it, but tell me what you want.
DEFENSE ATTORNEY : Okay. If I have to have to put on it, I want to say - - I want the Court to admonish the jury that - - just say that she stated - - when she was testifying, she included details that were not responsive to the question of "Have you ever separated," and the jury should -- is admonished to ignore those, anything that was not responsive.
*851 THE COURT : Disregard any testimony that was not responsive to the question. Okay with the State?
....
PROSECUTOR : Yes, judge.
....
(The jury is reconvened and the following proceedings took place in open court:)
....
THE COURT : All right. Now, I want to give you an instruction early on. Sometimes a witness may give a response to a question that is not really responsive to a question. And, when that happens, you all should disregard this pretty much extraneous testimony. And if there's an objection to it, it's because it's agreed that we would not go into all of this extraneous stuff.
So that's what happened in this case, and we ask that you disregard her testimony in response to [the prosecutor], which was not responsive to [the prosecutor's] question.
All right. Thank you. Go ahead.[1]
On appeal, McDaniel contends that the circuit court erred in denying his motion for mistrial. McDaniel contends that there is no remedy to cure Wilson's testimony, it was too prejudicial, and the circuit court erred by not granting a mistrial. The State asserts that the instruction cured any error and urges this court to affirm the circuit court.
The record demonstrates that the circuit court found that the statement was nonresponsive to the question posed and denied the motion for mistrial. The circuit court admonished the jury that the statement was nonresponsive and to disregard the statement:
All right. Now, I want to give you an instruction early on. Sometimes a witness may give a response to a question that is not really responsive to the question. And, when that happens, you all should disregard this pretty much extraneous testimony. And if there's an objection to it, it's because it's agreed that we would not go into all of this extraneous stuff.
So that's what happened in this case, and we ask that you disregard her testimony in response to [the prosecutor], which was not responsive to [the prosecutor's] questions.
In Hall v. State , 314 Ark. 402, 862 S.W.2d 268 (1993), we reviewed a challenge to the denial of a mistrial regarding a police officer's comments about Hall's previous illegal conduct. Hall was charged with burglary as well as being a habitual offender. Id. We addressed whether the following statement, when referring to the officer's identification of Hall, warranted a mistrial: "[W]e've had previous occasions and stuff," we held that it did not and explained:
This Court has observed that there is always some prejudice that results from the mention of a prior bad act in front of the jury. Strawhacker v. State , 304 Ark. 726, 804 S.W.2d 720 (1991). In instances where the infraction creates minimal prejudice the proper remedy is an objection to the evidence and an admonition or instruction to the jury to disregard the remark. Salinger [Sullinger] v. State , 310 Ark. 690, 840 S.W.2d 797 (1992). A motion for mistrial is only appropriate where the error is beyond repair and cannot be corrected by any curative relief. Id. ; Enos v. State , 313 Ark. 683, 858 S.W.2d 72 (1993). The trial court has wide discretion in granting or *852 denying a motion for mistrial, and the decision of the trial court will not be reversed except for abuse of discretion or manifest prejudice to the complaining party. Davasher v. State , 308 Ark. 154, 823 S.W.2d 863 (1992).
Hall , 314 Ark. 402, 405-06, 862 S.W.2d 268, 270 (1993).
Also, in Strawhacker v. State , 304 Ark. 726, 804 S.W.2d 720 (1991), we addressed a police officer's testimony about Strawhacker's prior illegal conduct. The following testimony regarding Strawhacker was challenged:
DETECTIVE : We began to research through our department files to see what information we might have on Mr. Strawhacker. The only thing that we could find there was that he had been involved in a fight in May of 1989. We didn't have any current photographs of him on file, but we did have a misdemeanor arrest warrant for him for failure to answer a summons on a failure to pay fines and costs on an original charge of third degree battery.
Id. at 728, 804 S.W.2d at 722.
We affirmed the circuit court and explained that there was no deliberateness on behalf of the prosecutor, and the prosecutor's action was inadvertent and did not specifically elicit the response from the detective. Id. ; see also Green , 2013 Ark. 497, 430 S.W.3d 729. We stated: "Any prejudice ... was sufficiently cured by the trial court's admonishment, and the trial court was correct in denying the mistrial motion under these facts." Strawhacker at 729, 804 S.W.2d at 722. Recently, in Green , 2013 Ark. 497, at 27-28, 430 S.W.3d 729, 747-48, we recounted our law on mistrials: "We have said in a myriad of cases that mistrial is a drastic remedy and rests with the discretion of the trial judge. It should be granted only when the prejudice is so manifest that the trial cannot in justice continue. Novak v. State , 287 Ark. 271, 277, 698 S.W.2d 499, 503 (citing McFarland v. State , 284 Ark. 533, 684 S.W.2d 233 (1985) ); see also Sanders v. State , 277 Ark. 159, 639 S.W.2d 733 (1982) (affirming the trial court's denial of a mistrial motion in a rape trial where one police officer mentioned seeing what he believed to be controlled substances in the defendant's bedroom and another officer said he remained in the house "collecting evidence on the other charge"); Hill v. State , 275 Ark. 71, 85, 628 S.W.2d 284, 291 (1982) (we affirmed a psychiatrist for the prosecution, testifying on the defendants sanity, when asked what he relied on for his opinion, mentioned certain test results and added, "I also had access to his prison records."); Hogan v. State , 281 Ark. 250, 663 S.W.2d 726 (1984) (upholding the trial court's refusal to order a mistrial where a police officer, asked by the prosecutor if these fingerprints were the first taken of the defendant, answered, "No, sir, that's all I took. We do have a prior arrest record on him, which we do have a fingerprint on."); see Mitchael v. State , 309 Ark. 151, 155, 828 S.W.2d 351, 354 (1992) (denying mistrial after statement regarding previous arrest warrant for rape because the jury probably believed the warrant had been issued on the current rape charge)."
Based on the record before us and our standard of review, we are not convinced that Wilson's testimony rises to the level of granting a mistrial. Here, the prosecutor's question was whether Wilson and McDaniel had ever separated and did not ask her to explain why the two may have separated. Also, the court was careful not to repeat Wilson's statement in case the jurors did not hear it the first time. Finally, the circuit court is in a better position to determine the effect of such remarks on the jury, and the judge concluded that *853 Wilson's remark regarding a black eye was insufficient to warrant a mistrial and admonished the jury to disregard the statement as nonresponsive. We cannot say that the circuit court abused its discretion in denying McDaniel's motion for a mistrial. A curative instruction is an acknowledged means of curing error. Sullinger v. State , 310 Ark. 690, 840 S.W.2d 797 (1992). Defense counsel received part of the relief he requested. King v. State , 312 Ark. 89, 95, 847 S.W.2d 37, 40-41 (1993). Based on our discussion above, we do not find error, and we affirm the circuit court.
In compliance with Ark. Sup. Ct. R. 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to McDaniel, and no prejudicial error has been found.
Affirmed.

Before the jury returned to the courtroom, the circuit court also admonished Wilson to provide responsive answers to the questions that she was asked.